JEREMIAH J. COLMAN et al., Respondents, *v.* SAMUEL CRUMP, Appellant.

Where a party has established a right to the use of "a name, symbol, letter, form or device," as a trade-mark to distinguish goods manufactured and sold by him from those of other manufacturers, it is an infraction of that right for another to print or manufacture, or put on the market for sale for use upon articles of merchandise of the same kind any device or symbol which, by its resemblance to such trade-mark, will be liable to deceive the public. It is not necessary that the symbol or device complained of should be a *fac simile* of the genuine trade-mark, or so close an imitation as to be distinguished only by an expert, or upon critical examination by one familiar with the original; if the resemblance is such as to deceive a purchaser of ordinary caution, or if it be calculated to deceive the careless and unwary, and thus to injure the sale of the goods of the proprietor of the trade-mark, it is a violation of his property rights therein, and he may maintain an action to restrain such violation and to recover damages therefor.

To sustain such an action it is not necessary to establish a guilty knowledge, or fraudulent intent on the part of defendant. It is sufficient to show the proprietary right of the plaintiff, and its actual infringement.

The fact that the same device is used upon other articles of merchandize, does not take from the plaintiff the exclusive right to its use upon the article manufactured by him.

(Argued September, 18, 1877; decided October 2, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff entered, upon a decision of the court at Special Term. (Reported below, 8 J. & S., 548.)

This action was brought to restrain an alleged violation of plaintiffs' right to a trade-mark, and for damages.

The following facts, among others, were substantially found by the court:

The plaintiffs, who, under their firm-name of J. & J. Colman, were largely engaged in the manufacture and sale of mustard as a condiment for the table, more than seventeen years prior to the commencement of this suit, in order more clearly to distinguish the mustard manufactured and sold by them from all other mustard, adopted as their trade-mark

the figure of a bull's head. At the time of the adoption of the said trade-mark the plaintiffs had no knowledge of any prior use of the figure of a bull's head on any mustard labels. From the time of the adoption of said trade-mark they have, on every can, bottle, and package of mustard manufactured and sold by them, affixed, prior to the sale thereof, a label, on which was conspicuously printed or engraved the figure of a bull's head, with a notice that such figure was the trade-mark of the plaintiffs; and the figure of a bull's head on their mustard packages as their trade-mark has, ever since immediately after its adoption by them, been well known to the public in the United States and elsewhere, and especially to dealers in mustard, and the mustard of the plaintiffs has, by reason thereof, become generally known as the bull's-head mustard; and the said labels of the plaintiffs were well known to the defendant in this action. Since the year 1860 defendant has been engaged in engraving, printing, and selling labels designed and intended to be affixed to packages of mustard for sale and consumption, not the product or manufacture of the plaintiffs, which labels contained thereon, among other things, the word mustard and the figure of a bull's head, some of which are almost exact copies of the plaintiffs' labels; and the others are, in various degrees, colorable imitations thereof, and were calculated to deceive, and by the defendant intended to deceive, purchasers and consumers of mustard into the belief that they were purchasing the mustard of the plaintiffs, when the mustard in the packages to which said labels were or might be, and were intended to be attached, was not the mustard of the plaintiffs. All the labels so engraved, printed, and sold by the defendant have been and are in use by dealers in and attached to mustard other than the plaintiffs', and kept for sale in various parts of the United States.

The court found the following conclusions of law: That the plaintiffs are entitled to the exclusive use of the figure of a bull's head as their trade-mark on labels attached to mustard; that the engraving, printing, and selling of labels by

the defendant, to be attached to packages of mustard, whether put up in tins, bottles, or otherwise howsoever, are violations of the plaintiffs' rights; that the plaintiffs are entitled to a perpetual injunction against the defendant, as demanded by them in their complaint.

*Wm. Henry Arnoux*, for the appellant. Plaintiffs could not have a trade-mark of the kind and character claimed by them. (*Newman* v. *Alvord*, 49 Barb., 588; 51 N. Y., 189; *Congress Co.* v. *High Rock Co.*, 45 id., 291; *Coal Co.* v. *Clark*, 13 Wal., 311; *Wolfe* v. *Goulard*, 18 How. Pr., 64; *Filley* v. *Fassett*, 41 Mo., 173; 8 Am. L. Reg. [N. S.], 402; *Messerole* v. *Trynberg*, 36 How. Pr., 14; *Gillott* v. *Esterbrook*, 48 N. Y., 374; affirming, 47 Barb., 455; *Meneely* v. *Meneely*, 62 N. Y., 427; *Corwin* v. *Daly*, 7 Bosw., 222; *Gray* v. *Koch*, 2 Mich. [N. P.], 119; *Raggett* v. *Findlatee* [L. R.], 17 Eq., 29; *Lea* v. *Wolf*, 13 Abb. [N. S.], 391; *Hartell* v. *Viney*, 2 Weekly Dig., 602; *Candee* v. *Deere*, 54 Ill., 439.) Their claim was not only improper as to extent, but also as to its nature, in claiming the ownership of the label as distinguished from its use. (*Leather Cloth Co.* v. *Patent Leather Co.*, Am. T. C., 690; *Stowe* v. *Thomas*, 2 Wal., Jr., 547; 2 Am. L. Reg., 230; *Tompkins* v. *Lee*, 59 N. Y., 662; *Farina* v. *Silverlock*, 39 E. L. & Eq., 514.) It is only when the goods of one person are sold as for those of another that, in an action for the infringement of a trademark, a court of equity will interfere. (*Merrimack Mfg. Co.* v. *Garner*, 2 Abb., 318; *Coats* v. *Holbrook*, Am. T. M. Cas., 27; *Partridge* v. *Menck*, id., 77; *Am. Man. Co.* v. *Spear*, id., 92; *Davis* v. *Kendall*, id., 114; *Stokes* v. *Landgraff*, id., 137; *Walton* v. *Crowley*, id., 174; *Samuel* v. *Berger*, id., 178; *Clark* v. *Clark*, id., 208; *Wolfe* v. *Goulard*, id., 229; *Phalon* v. *Wright*, id., 308; *Derringer* v. *Plate*, id., 227; *Gillott* v. *Esterbrook*, id., 347; *Curtis* v. *Bryan*, id., 438; *Messerole* v. *Tynberg*, id., 484; *Boardman* v. *Mer. Brit. Co.*, id., 503; Upton on Trade-marks, 136; Browne on Trade-marks, §§ 58, 66; *Crawshay* v. *Thompson*,

4 M. & G., 357, 371; *Clark* v. *Freeman*, 11 Beav., 112; *Leather Cloth Co.'s Case*, Am. T. M. Cas., 697; 11 H. of L. Cas., 523; *Lalande* v. *Appel*, Browne on T. M., 92; id., §§ 311, 312, 499, 500; *Wolfe* v. *Burke*, 56 N. Y., 115; *Calladay* v. *Baird*, 7 Up. Can. L. J., 132; *McCartney* v. *Garnhart*, 45 Mo., 593; *Davis* v. *Kendall*, 2 R. I., 569; *Burnett* v. *Phalon*, 12 Mo. L. R., 221; *Canham* v. *Jones*, 2 V. & B., 218; *Perry* v. *Truefitt*, 6 Beav., 66; *Merrimack* v. *Garner*, 4 E. D. S., 387; *Bell* v. *Locke*, 8 Paige, 75; *Stephens* v. *DeGonto*, 7 Rob., 343; *Snowden* v. *Noah*, Hop. Ch., 347; *Partridge* v. *Menck*, 1 How. App. Cas., 588; *Cope* v. *Evans* [L. R.], 18 Eq., 138; *Wotherspoon* v. *Currie*, 5 L. R. [H. L. C.], 508; *Congress Spring Case*, 45 N. Y., 298; *Newman* v. *Alvord*, 51 id., 195; *Dixon Crucible Co.* v. *Guggenheim*, 2 Brews., 335.) The rule, *qui prior est in tempore potior est in jure*, must of necessity be the law in trade-mark cases. (*Bedford* v. *Hunt*, 1 Mason, 302; *Evans* v. *Eaton*, 3 Wheat., 454, 514; *Evans* v. *Hettick*, 3 Wash., 443; *Harwook* v. *Gt. N. W. R. Co.*, 11 H. L. Cas., 652; *G. & H. Mfg. Co.* v. *Hall*, 61 N. Y., 226, 234; *Hall* v. *Barrows*, 4 DeG., J. & S., 150; *Wotherspoon* v. *Currie*, 42 L. J. Ch., 130; *Radde* v. *Norman*, 14 L. R. Eq., 348; *Hirst* v. *Denham*, id., 542; *Crodillot* v. *Hazard*, 49 How. 5; *Collins* v. *Cowen*, 4 K. & J., 428; *Stokes* v. *Landgraff*, 17 Barb., 608; *Cook* v. *Starkweather*, 13 Abb Pr. [N. S.], 309; *Popham* v. *Wilcox*, 38 Supr. Ct. R., 274; *Evans* v. *Eaton*, 3 Wheat., 514; *Earl* v. *Sawyer*, 4 Mass., 1; *Watson* v. *Bladen*, 4 Wash., 583.) Plaintiffs are not entitled to the relief sought, because they did not come into court with clean hands. (*Laird* v. *Wilder*, 9 Bush. [Ky.], 131; *Fowler* v. *Spear*, 7 Penn. L. J., 186; *Heath* v. *Wright*, 3 Wal., Jr.; *Palmer* v. *Harris*, 60 Penn., 156; *Wolfe* v. *Burke*, 56 N. Y., 115–122; *Flavel* v. *Harrison*, 19 Eng. L. & Eq., 15; 2 Pars. on Con. [6th ed.], 374; *Escourt* v. *Escourt Hop Essence Co.* [L. R.], 10 Ch. App., 276; *Perry* v. *Truefitt*, 6 Beav., 66; *Hogg* v. *Hirley*, 8 Ves., 214.)

*Andrew Boardman*, for the respondents. Defendant's use of plaintiffs' trade-mark was unlawful and will be prohibited. (*Crawshay* v. *Thompson*, 4 M. & G., 357; *Rodgers* v. *Nowell*, 11 Jur., 1039; *Millington* v. *Fox*, 3 M. & C., 338; *Fettridge* v. *Merchant*, 4 Abb. Pr., 144; *Amoskeag Man. Co.* v. *Spear*, 2 Sand., 599; *Howard* v. *Henriques*, 3 id., 725; *Congress Spring Co.* v. *High Rock Spring Co.*, 45 N. Y., 291.) The question in this case is not whether a cautious and careful purchaser would be deceived, but whether the unwary, heedless, or incautious would be likely to be deceived. (*Leather Cloth Co.* v. *Am. Cloth Co.*, 11 H. L. Cas., 523; *Glenny* v. *Smith*, 2 Dr. & Sm., 476; *Seixe* v. *Providenze*, 1 L. R. Ch. App., 192; *Walton* v. *Crowley*, 2 Blatch., 440; *Clark* v. *Clark*, 25 Barb., 79; *B'klyn White Lead Co.* v. *Masury*, id., 416.) It was not necessary that plaintiffs' specific trade-mark should be infringed, if a fraudulent intent appeared by using a label bearing a general resemblance to it and calculated to deceive. (*Woolam* v. *Ratcliff*, 1 Hun & M., 259; *Binninger* v. *Wattler*, 28 How., 206; *Knott* v. *Morgan*, 2 Keen, 213.) A man will be protected in the use of signs and words which have become associated with his business, although they would, at first blush, seem the common property of mankind. (*Howard* v. *Henriques*, 3 Sand., 725; *Braham* v. *Bustard*, 9 L. T. R. [N. S.], 194–199; *Taylor* v. *Carpenter*, 3 Story, 458; 2 Sand. Ch., 603; 11 Paige, 292; *Gillott* v. *Kettle*, 3 Duer, 624; 25 Barb., 416; *Williams* v. *Johnson*, 4 Abb. Pr., 394; 25 How., 366; *Burnett* v. *Phalon*, 9 Bosw., 192; 3 Keyes, 594; *Cocks* v. *Chandler*, L. R. 11 Eq., 446, 451; *Marsh* v. *Billings*, 7 Cush., 322; *Christy* v. *Murphy*, 11 How. Pr., 77; 45 N. Y., 291; *Rogers* v. *Norville*, 11 Jur., 1039; *Crawshay* v. *Thompson*, 4 M. & G., 357; *Knot* v. *Morgan*, 2 Keen, 213; *McAndrew* v. *Bassett*, 10 Jur. [N. S.], 550.)

ALLEN, J. The plaintiffs do not claim to have copyrighted their labels, and it was not, therefore, incumbent on them to show that they had complied with the act of Con-

gress on that subject. They merely claim to be protected in the use of a figure of a bull's head, printed on their labels as a trade-mark; a symbol by which mustard, the product of their manufacture, is known and distinguished from that manufactured and sold by others, adopted by them many years since; and to which symbol, as a trade-mark, they claim to have acquired by use the exclusive right. It is used, not to designate the quality of the article or the place of its manufacture, but the plaintiffs as the manufacturers, to distinguish their mustard from the same article manufactured by others,

A party may have a property in — that is, an exclusive right to use — a "name, symbol, figure, letter, form or device," to distinguish goods manufactured and sold by him from those manufactured and sold by others, or to indicate when or by whom, or at what manufactory the article to which it is affixed is manufactured. This property right the courts will protect by injunction, and for its invasion the law gives compensation in damages. It is an infraction of that right, to print or manufacture, or put on the market for sale, and sell for use upon articles of merchandise of the same kind as those upon which it is used by the proprietor, any device or symbol which by its resemblance to the established trade-mark will be liable to deceive the public, and lead to the purchase and use of that which is not the manufacture of the proprietor, believing it to be his. It is not necessary that the symbol, figure, or device used or printed and sold for use, should be a *fac simile*, a precise copy, of the original trade-mark, or so close an imitation that the two cannot be distinguished except by an expert, or upon a critical examination by one familiar with the genuine trade-mark. If the false is only colorably different from the true; if the resemblance is such as to deceive a purchaser of ordinary caution; or if it is calculated to deceive the careless and unwary ; and thus to injure the sale of the goods of the proprietor of the trade-mark, the injured party is entitled to relief. Neither is it necessary to establish a guilty knowl-

edge or fraudulent intent on the part of the wrong-doer. It is sufficient that the proprietory right of the party and its actual infringement is shown. These general principles are well established, and the right of the plaintiffs to adopt the arbitrary symbol of a bull's head as their trade-mark, and to be protected in its exclusive use, cannot be questioned. It is not like the adoption of some name, title, or description which has respect to place or quality, and which may be equally true when applied to articles manufactured or sold by others. (*Congress, etc., Spring* v. *High Rock Spring*, 45 N. Y., 291; *Newman* v. *Alvord*, 51 id., 189; *Millington* v. *Fox*, 3 M. & C., 338; *Knott* v. *Morgan*, 2 Keen, 213; *Leather Cloth Co.* v. *Am. L. C. Co.*, 11 H. L. Cases, 523; *Cransbey* v. *Thompson*, 4 M. & G., 356; Upton on Trade-marks, 9; *Canal Co.* v. *Clark*, 13 Wall., 311.)

The learned Judge has, upon satisfactory evidence, found and reported every fact material or necessary to sustain the judgment. He had before him evidence, which we have not. Very many of the exhibits and specimens of the defendant's labels are not in the record, but we doubtless have all that the parties deemed material to place before a court of review having jurisdiction only of questions of law. There was some conflict of evidence, but not such a discrepancy as to lead us to doubt the correctness of the conclusions of the trial judge — if we had authority to review his findings — which, there being evidence to support them, we have not. The judge has found that, some seventeen years before the bringing of the action, the plaintiffs adopted, and from that time have used, as their trade-mark, and to distinguish mustard of their manufacture from all others in the markets of this country, as well as other parts of the world, the symbol or device of a bull's head; and that it had become a well-known sign and mark of their mustard, and that it had not before then been adopted or used as a trade-mark for the same article of merchandise by any one. It would seem that it has not since been legitimately used as a trade-mark upon mustard, except by the plaintiffs.

The evidence to show the use of the device by the plaintiffs as a trade-mark upon packages of mustard prior to any other manufacture of the article, is not controverted by any other satisfactory evidence. Its use by others had been casual and occasional, and as an ornament rather than as a distinguishing mark of the mustard manufactured and sold, and it does not appear to have been used as a trade-mark as that term is understood. Recently, it has been used rather as a means of availing the parties using it of the reputation of the plaintiffs' " bull-head mustard " than for any other purpose, as may be inferred from the evidence. The judge has also found that the symbols and devices printed and sold by the defendant are imitations of the plaintiffs' trade-mark, calculated to deceive the public. Slight variations in the figure of the head, by which an expert might detect a resemblance to an animal of a different descent or breed in the simulated trade-mark from that which might be supposed to have been in the eye of the artist in designing the original, cannot avail the defense. There is a general resemblance in all the bulls heads printed and made exhibits in this action. Any difference is colorable, and would not prevent the ordinary purchaser from being deceived. The fact that the same device is used upon other articles of merchandise, does not take from the plaintiffs their right to its exclusive use on this one article of their manufacture. The question presented by the record is one of fact and not of law, and upon the facts found upon competent evidence, the plaintiffs were entitled to their judgment. There can be no pretense upon the evidence that the plaintiffs use their trade-mark to put off upon the public a spurious or fraudulent article. The mustard of their manufacture is composed of the same materials, and in like proportions, so far as is shown, as that of other manufacturers and dealers, and has acquired a high reputation in the market, of which others are willing to avail themselves. Their mustard is the mustard of commerce, the composition of which is well understood, and the different grades and mixtures are to meet the different wants of the community

and the purposes, whether medicinal or as a condiment, for which it is used. There was no error in the admission or exclusion of evidence upon the trial.

The judgment must be affirmed.

All concur.

Judgment affirmed.