MUNRO *v.* SMITH *et al.*

(*Supreme Court, General Term, First Department.* February 11, 1891.)

1. TRADE-MARK—INJUNCTION.
Plaintiff was the publisher of a work of fiction under the title "Old Sleuth, the Detective," on the cover of which was that title, with a picture representing "Old Sleuth." Defendants published a story called "Bruce Angelo, by Old Sleuth," on the cover of which was that title, with a picture of the alleged author, copied from the picture on the cover of plaintiff's book, and the name "Old Sleuth, the Detective," applied to that picture. In an action by plaintiff for an injunction against defendants' publication the evidence showed at most that a casual or hasty purchaser might be misled thereby, but not that any purchaser was in fact misled, or that there was any intention to deceive, or that plaintiff was injured by the representations made on the cover of defendants' book; and it did not appear that an ordinary purchaser would be deceived thereby. *Held* that, although plaintiff had acquired an exclusive right to the title "Old Sleuth, the Detective," as applicable to a work of fiction, as he had no property right in the name as indicating authorship, and could not have any property right in the picture, that being no trade-mark, but a mere illustrative feature of the work, there was no such invasion of his rights as to entitle him to an injunction.

2. COSTS—EXTRA ALLOWANCE.
An action to restrain, as an infringement of plaintiff's exclusive right to the title of a book, the publication by defendants of a book on the cover of which that title appeared as the name of the author, with a picture copied from the cover of plaintiff's book, was brought after defendants had offered to dispense with the use of such picture in future. There was no proof that any purchaser was deceived. *Held* that, on judgment for defendants, it was a proper exercise of discretion to award them costs and an extra allowance.

Appeal from special term, New York county.

Action by George Munro against Ormund G. Smith, George C. Smith, and Cora A. Smith. On trial by the court without a jury the complaint was dismissed, with costs and an extra allowance to defendants. Plaintiff appeals from the judgment for defendants entered thereon. For former reports, see 2 N. Y. Supp. 313; 6 N. Y. Supp. 426; 7 N. Y. Supp. 947; 8 N. Y. Supp. 671; and 11 N. Y. Supp. 940.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Roger Foster,* for appellant. *Archibald L. Sessions,* for respondents.

BARRETT, J. There can be no doubt that the plaintiff has acquired the exclusive right to the title "Old Sleuth, the Detective," as applicable to a work of fiction. Nor can there be any doubt of his right to couple with that name a picture or other token, and thus to found a trade-mark in the combination of title and token. The difficulty here, however, is twofold: *First,* the picture is not such a token, but a mere illustration of a character in the book, (*Munro* v. *Smith,* 8 N. Y. Supp. 671;) and, *second,* the defendants have not infringed upon the title "Old Sleuth, the Detective," as applied to a work of fiction. If

they had infringed upon the title, then the copying of the picture, though such picture may be nothing more than an illustration, would be evidence of a fraudulent purpose. Indeed, if there were a doubt engendered by a variation in the title,—that is, whether or not such variation was merely colorable,—the pictorial context might properly be referred to, to solve such doubt. In other words, the whole title-page could be looked at to ascertain whether the defendants were appropriating the name and trade-mark which the plaintiff had adopted to designate his publications. The real question in this case is just there. Have the defendants done this? If they have, they should have been enjoined; but if they have acted innocently, and the resemblance between the respective title-pages is so slight that there is no probability or likelihood of deception, the case was properly disposed of. It is clear that the plaintiff's property rights with regard to the name of "Old Sleuth" are no greater than we have indicated. He had no property in the name as indicating authorship. Mr. Halsey has a perfect right to publish new novels, from time to time, and to say that they are by the author of "Old Sleuth, the Detective;" or—using his *nom de plume*—by "Old Sleuth;" and he may confer that same right upon the defendants. Nor has the plaintiff a property right in the picture of "Old Sleuth,"—that is, in the pictorial form or idea which we find on the title-page,—for the reason, already suggested, that that picture is not in any sense a trade-mark, indicating the publisher or his publications, but a mere illustrative feature of a particular work or series of works of fiction. The question, then, is narrowed down to this: Would an ordinary purchaser of these stories be likely to be deceived by the defendants' title-page? Would he, instead of a new story by "Old Sleuth," believe that he was purchasing "Old Sleuth, the Detective," or one of that series to which the plaintiff has appropriated the name "Old Sleuth?" We think not. We have examined the two covers or title-pages, and can see no reasonable ground for mistake on this head. The attention of the buyer would undoubtedly be called by the defendants' cover to "Old Sleuth" and to "Old Sleuth, the Detective;" and one who was acquainted with the stories in which "Old Sleuth" had figured might not unnaturally be expected to stop and look at this novel title-page. But for what purpose? Plainly, to see if it was a new edition of the old story which he had previously read, or a new story in which the admired character would again figure. And what would he find if he could read plain English? Not at all a story called "Old Sleuth," or "Old Sleuth, the Detective," or a story in which that character was promised as one of the *dramatis personæ*, but a story called "Bruce Angelo," by "Old Sleuth." He would see a picture of the alleged author, and the name "Old Sleuth, the Detective," applied to that picture. He would see nothing of the plaintiff's "Old Sleuth Library," but, instead, the defendants' "Secret Service Series;" and, finally, the publishers' names, "Street & Smith," plainly printed at the bottom of the page. It is true that the learned judge at special term has found that the picture upon the defendants' cover was copied from that upon the plaintiff's, and that this was calculated to mislead a casual purchaser, or one purchasing a book in haste or without close observation, into mistaking the book for an edition of "Old Sleuth, the Detective;" but he expressly refused to find that an ordinary purchaser would be likely to be thus misled. He also refused to find that the defendants thus acted fraudulently or in bad faith, or with intent to deceive buyers or to cheat the plaintiff. He also refused to find that the defendants have thus obtained profits, or that a continuation of their acts will cause the plaintiff irreparable injury, so great that no damages in an action at common law would afford him any adequate remedy. There was, in fact, no evidence in the case that any purchaser ever was deceived, or that the plaintiff was injured in the slightest degree by the representations made by the defendants' cover or title-page. Indeed, we have con-

siderable doubt of the accuracy of the finding that even a casual or hasty purchaser could be deceived.

Under these circumstances the plaintiff was not entitled to an injunction. We do not concur in the opinion of the learned judge that, even if the defendants' cover was designed as a fraudulent imitation of the first number of the "Old Sleuth Library," and was calculated to deceive a purchaser of ordinary intelligence, the plaintiff could still have no relief. If these facts had appeared, we think the plaintiff would have been entitled to an injunction even without proof of actual sales to persons who were deceived. In *Edelsten* v. *Edelsten*, 1 De Gex, J. & S. 200, Lord WESTBURY said that it was not "necessary for relief in equity that proof should be given of persons having been actually deceived, and having bought goods with the defendant's mark under the belief that they were the manufacture of the plaintiffs, provided the court be satisfied that the resemblance is such as would be likely to cause the one mark to be mistaken for the other." But, in the absence of proof of the intention to deceive, or that purchasers have actually been misled by a resemblance, if the two trade-marks are not to the eye of the court either altogether identical, or so similar that the court considers the difference unsubstantial, an injunction will be refused. *Coffeen* v. *Brunton*, 5 McLean, 256. Several authorities were examined in *Cope* v. *Evans*, L. R. 18 Eq. Cas. 151, and Vice-Chancellor HALL states the result in these words: "That the law of the court is that it will not grant the injunction unless it is satisfied that there will be deception, or that there is a probability or likelihood of deception, or, in Lord KINGSDOWNS' words, that what the defendant does is calculated to deceive. The burden of proof is on the plaintiffs, there being no proof of actual deception, and no proof that the defendants' object was deception." It follows both from the findings and our own inspection of the covers, that a case for equitable interference was not made out. The finding with respect to a casual purchaser is not the criterion in a case like the present. The rule has regard to the ordinary purchaser. I agree with Sir GEORGE JESSEL in *Manufacturing Co.* v. *Wilson*, 2 Ch. Div. 447, when he says: "I am not, as I consider, to decide cases in favor of fools and idiots, but in favor of ordinary English people, who understand English when they see it, and are not deceived by any difference in type, but who have before them a very plain statement." There are undoubtedly cases where the law will consider the probable ignorance of the purchaser, such as where domestics are in the habit of buying kitchen soaps, and the like, and also cases where even the careless and unwary will be looked after, (*Colman* v. *Crump*, 70 N. Y. 573,) but novel readers, even of the "Old Sleuth kind," ought to be able to read plain English, to know what the cover of a book repsesents, and to get what they want. The casual or hasty buyer who could be deceived by the defendants' title-page, and led thereby to purchase "Bruce Angelo" in the belief that he was purchasing "Old Sleuth, the Detective," or one of the "Old Sleuth Library" series, would certainly belong to one of the classes referred to by Sir GEORGE JESSEL. Our conclusion is that, upon the findings of the special term, supported as they are by the evidence, there was no invasion of the plaintiff's property rights in the title "Old Sleuth, the Detective," or "Old Sleuth," as applied to a work of fiction, no attempt to palm off the defendants' publications as the plaintiff's, no representation upon the subject calculated to deceive an ordinary purchaser, and no injury whatever. If costs were to be awarded at all, the allowance was not unreasonable, considering that the case had been twice tried. As to the award of costs, we think the special term properly exercised its discretion in view of the fact that the action was brought after the defendants had written to the plaintiff, stating that they would in future dispense with the use of the picture complained of. When we consider, too, the absence of proof that any purchaser of the defendants'

books was ever deceived, the plaintiff should take the ordinary consequences of an unsuccessful litigation. The judgment should therefore be affirmed, with costs.

VAN BRUNT, P. J., concurs in the result. BARTLETT, J., not voting.