Ford Motor Company, Plaintiff, *v.* C. N. Cady Co., Inc., Defendant.

Supreme Court, Onondaga County, March 10, 1925.

**Trade marks and trade names — unfair competition — defendant restrained from further use of word " Ford " or " Cadyford " in connection with manufacture and sale of marine motors or engines.**

The Ford Motor Company is entitled to an injunction restraining the defendant from further use of the word " Ford " or " Cadyford " in connection with the manufacture and sale of marine motors or engines, since it appears that the defendant, by taking the part known as the block assembly from the Ford engine and reversing it, and adding other parts of its own and other manufacturers, has developed and put upon the market an engine suitable for motor boats, and has extensively advertised it, displaying in prominent type the word " Cadyford " and adding the statement that if the engine should become broken or worn, any part of the motor could be duplicated with little delay and expense because practically every part could be purchased at any store or garage where Ford motor parts are sold.

The name " Cadyford " so resembles plaintiff's trade mark or trade name that it is calculated to deceive the public and cause confusion in the trade, especially in view of defendant's advertisements.

Action by the Ford Motor Company to enjoin the defendant from the further use of the word " Ford " or " Cadyford " in connection with its engines and motors.

*William H. Harding,* for the plaintiff.

*R. D. Woolsey,* for the defendant.

Edgcomb, J.:

The Ford engine and automobile were developed by Henry Ford prior to 1903. He assigned his inventions to the Ford Motor

Company, a corporation organized under the laws of the State of Michigan, and that company continued to manufacture such motors and automobiles until July, 1919, when the present plaintiff was organized under the laws of the State of Delaware, and all the assets, rights, trade marks and good will of the former corporation were assigned to the new company. Mr. Henry Ford and his son Edsel B. Ford are heavily interested in and are directors and officers of the plaintiff. In 1909 the Michigan company duly registered the trade mark " Ford," covering automobiles, explosive engines and their parts, in the United States Patent Office. The trade mark has become familiar to the public, and is prominently displayed upon all Ford automobiles and parts, and upon the various service stations maintained by the plaintiff throughout the country. For years the plaintiff has extensively advertised its products throughout the world, and the word " Ford " is familiar to practically every intelligent adult in this country, and has become a household word. It immediately brings to mind the automobile and engine manufactured by the Ford interests.

The Ford engine is used only in motor vehicles. It is not a marine engine, and is not adapted for motor boats.

For years the defendant has been engaged in the manufacture and sale of gasoline explosive engines for motor boats. While their engines are well known to the trade, their reputation and output is infinitesimal in comparison with that of the plaintiff.

Several years ago the defendant experimented with a Ford engine, and by taking a part, known as the block assembly, and reversing it, and adding other parts of its own and other manufacturers defendant developed and put upon the market an engine suitable for motor boats, which was called " Ford Fisherman " or " Fisherman's Ford." Upon objection being made by the plaintiff, the use of this name was discontinued, and the engine was rechristened " Cadyford." Defendant has extensively advertised it in various magazines and pamphlets, displaying in prominent type the word " Cadyford," and adding the statement that if it should become broken, or worn, any part of the motor could be duplicated with little delay and expense, because practically every part could be purchased at any store or garage where Ford parts were sold.

Plaintiff seeks to enjoin the defendant from the further use of the word " Ford " or " Cadyford " in connection with its engines and motors.

Whether the word " Ford " be considered as a technical trade mark or simply as a valuable trade name is unimportant, because the same essential rules of law and equity are applicable to both.

(*Glen & Hall Mfg. Co.* v. *Hall*, 61 N. Y. 226; *Ball* v. *Broadway Bazaar*, 194 id. 429.)

Concededly plaintiff had the right to use the word " Ford " to designate its products. It was the name of the inventor, and the man most heavily interested in and responsible for the incorporation of the plaintiff. The law protects the right of a man to use his own name in his own business. There is no one connected with the defendant by the name of Ford, and its appropriation of that name cannot be justified upon the theory that those interested in the company are using their own name.

When one has established his right to use a trade mark or trade name to characterize the products of his factory, it is an infringement of that right if another uses the same, or a similar device or name which tends to create confusion, or deceive the public. (*Colman* v. *Crump*, 70 N. Y. 573; *Vulcan* v. *Myers*, 139 id. 364; *Higgins Co.* v. *Higgins Soap Co.*, 144 id. 462; *Ball* v. *Broadway Bazaar*, 194 id. 429.)

An infringement of the property right of one to a mark or name brings about an unfair competition. Every one is entitled to protection against unjust rivalry. Any conduct which tends to permit one to pass his goods or business off on the public as the goods or business of another constitutes unfair competition, and may be enjoined. (*Fischer* v. *Blank*, 138 N. Y. 244; Hopkins Trademarks [3d ed.], § 2.)

An easy way of depriving one of the trade he has built up is to copy his marks or names.

To entitle one to an injunction restraining the use of a trade mark or trade name it is not necessary to show that any person has actually been deceived by defendant's acts; it is the likelihood of injury which may be prevented. Neither is it necessary for the plaintiff to establish a guilty knowledge or fraudulent intent on the part of the defendant. (*Colman* v. *Crump, supra; Hier* v. *Abrahams*, 82 N. Y. 519; *Vulcan* v. *Myers, supra; Reckitt & Sons* v. *Kellogg*, 28 App. Div. 111; *Checker Cab Mfg. Co.* v. *Sweeney*, 119 Misc. 780.)

The name complained of need not be an exact duplication of the trade mark or name. The test is whether it is so similar as to be calculated to deceive the heedless, careless and unthoughtful. (*Colman* v. *Crump, supra.*)

If defendants had named their marine engine " Ford " and not coupled the name with any other word, there could be no doubt but what they would have been guilty of unfair competition, and could have been restrained from the use of that name. (*Swift & Co.* v. *Groff*, 114 Fed. 605.)

When defendant coined this new word and coupled its own name with that of Ford, did that relieve it of the charge of infringement and unfair competition? Does the use of this new word tend to confuse the trade, deceive the public and mislead the unwary? I think, and I find as a fact, that the name " Cadyford " so resembles plaintiff's trade mark or trade name that it is calculated to deceive the public and cause confusion in the trade. Especially is that so when one reads in all defendant's advertisements the recital that practically every part of the motor can be duplicated at any store or garage where Ford parts are sold. That statement would in my opinion convey to the average person the idea that this engine is a Ford product. To my mind one would be justified in concluding that the repeated reference to and comparison with the Ford motor, in the various advertisements of this engine, coupled with the use of the name " Ford," was intended to convey that impression. If it is not the intention of the defendant to capitalize plaintiff's name and reputation it cannot be harmed by adopting another name.

Plaintiff by years of labor and advertising has built up an immense business. It and its predecessor have put upon the market upwards of 11,000,000 Ford automobiles, and plaintiff is now turning out such machines at the rate of 6,500 a day. Its name and its good will are worth much, and are its own property, and the defendant has no right to appropriate any part thereof or to avail itself of the reputation plaintiff's products have acquired. It is true that no actual damage to the plaintiff has been shown. That is not necessary. If the public believes that the engine manufactured by the defendant is a Ford product and the engine proves unsatisfactory it cannot help but reflect upon the plaintiff. Then too it is not improbable that the plaintiff may at no distant date manufacture and place marine engines on the market. Its right to use its own corporate and trade name in connection with such new engine should not be jeopardized by a prior use of the word " Cadyford " on a similar style of engine.

The United States Patent Office has refused to permit parties other than the plaintiff to register as trade names certain coined words including the name " Ford," because of the similarity of the coined word and the trade mark of plaintiff, and the likelihood of confusion arising from the use of the two names. The following are a few of the names which came within the ban of the Patent Office.

" Fordfax " for use on accounting records and forms. (*Ford Motor Company* v. *Wren*, Opposition No. 5291; Application No. 5291, filed September 11, 1923.) " Hopford " for auto trucks.

(Opposition No. 2682.) " Holdford " for motor vehicle brakes (Opposition No. 2638.) " Tonford " for truck attachments. (Opposition No. 2290.) " Longford " for automobiles and parts. (Opposition No. 2403.) An injunction has been sustained by the courts in cases where the similarity of the names or marks has been no closer than they are here. ( *Newman* v. *Alvord,* 51 N. Y. 189; *Vulcan* v. *Myers, supra; Higgins Co.* v. *Higgins Soap Co., supra; Ball* v. *Best,* 135 Fed. 434; *Vogue Co.* v. *Thompson-Hudson Co.,* 300 id. 509.)

If I am right in the above conclusions equity will step in and restrain the invasion of plaintiff's rights.

Judgment for plaintiff. Findings if not agreed upon may be settled before me on two days' notice.